UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 18-11101 |
| Hendrikus Edward Ton | |
| *Debtors* | |
| Lynda Ronquillo Ton | Chapter 11 |
| *Plaintiff* | |
| v. | Judge John W. Kolwe |
| Hendrikus Edward Ton | |
| *Defendant* | Adv. Proc. No. 18-01129 |

**RULING ON REMAND FROM DISTRICT COURT REGARDING
USE OF LIFE INSURANCE POLICY PROCEEDS
UNDER LA. CIV. CODE ART. 2369.3**

This case was previously tried before the bankruptcy court on stipulated facts, and Judge Magner, the presiding judge at the time, issued a Judgment (ECF #49) and Opinion (ECF #50) on August 14, 2019, which was largely favorable to the Plaintiff, Lynda Edward Ton. The Defendant Debtor, Hendrikus Edward Ton, filed a Notice of Appeal (ECF #72) on November 25, 2019, seeking to overturn the decision. The Plaintiff filed a Notice of Cross-Appeal (ECF #82) on December 20, 2019, which did not seek to overturn the decision at all. Rather:

> Lynda Ton agrees to the final Judgment and with the reasons in the *Memorandum Opinion* (Doc. 50) of the Court accompanying the Judgment and only files this cross-appeal in an excess of caution to preserve her right to argue that there were additional bases and/or reasons upon which the Court could have reached the same ruling and final Judgment and to cross-appeal any adverse findings or conclusions should any part or all of the Judgment be reversed.

Plaintiff's Notice of Cross-Appeal, p. 1 (ECF #82). Thus, the Plaintiff fully accepted the bankruptcy court's decision and did not seek to either (a) overturn any of its

1

findings of facts and conclusions of law, or (b) argue that it had failed to consider any argument raised by the parties.

On appeal, the district court, Judge Milazzo presiding, entered an Order and Reasons on June 29, 2020, which vacated key findings by Judge Magner. *See Ton v. Ton*, No. 19-13889, Order and Reasons, p. 11 (E.D. La. June 29, 2020) (ECF #20). Most significantly, Judge Milazzo vacated the bankruptcy court's finding that the $3,582,451.00 Tax Liability was the Debtor's separate obligation and concluded that the nature of the obligation was not changed from a debt of the former spouses' community because the Debtor took out a loan from Hancock Whitney Bank to satisfy the Tax Liability following termination of the community. *Id.* at pp. 3-7. The district court also vacated Judge Magner's imposition of damages against the Debtor based on the Tax Liability because the record evidence did not support it. *Id.* at pp. 7-9.

The district court then turned its attention to the question of whether the Debtor's conversion of a life insurance policy and use of the proceeds to fund the business of Abe's Boat Rentals, Inc., was subject to reimbursement by the community, as the Plaintiff argued, or whether the Debtor was shielded from a reimbursement claim by the doctrine of real subrogation. *Id.* at pp. 9-11. The district court stated that the Debtor "used the proceeds to pay property taxes, repair costs, and insurance for Abe's vessels. Therefore, he argues, the community did not suffer a loss and no reimbursement was warranted," *Id.* at p. 10. The Debtor relies on La. Civ. Code art. 2369.3, which provides:

> A spouse has a duty to preserve and to manage prudently former community property under his control in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.

La. Civ. Code art. 2369.3. The Debtor "contends that under the doctrine of real subrogation, the conversion of a community life insurance policy into proceeds and the use of those proceeds to fund a community business 'merely shifted community

property from one location and use to another.'" District Court Order and Reasons, p. 9.

The district court noted that Judge Magner had applied an earlier version of the statute, which was amended in 2017. The pre-2017 version applied by Judge Magner concluded with: "A community enterprise is a business that is not a juridical person." Judge Magner held that because Abe's is a juridical person, it could not be a community enterprise under the terms of the statute, meaning the statute could not apply to its management. *Id.* at p. 10. As the district court explained, the revision notes to the current version of the statute state that "[t]he deletion of the reference to a community enterprise...does not change the law. That reference was both redundant and unnecessary. The duty to preserve applies to all community assets, regardless of their form." District Court Order and Reasons, p. 10 (quoting La. Civ. Code art. 2369.3 cmt. (a)). Indeed, even cases applying the pre-2017 version of the statute held that the article 2369.3 duty applied to management of former community juridical persons. *Id.* at pp. 10-11. Thus, the district court concluded that Judge Magner erred as a matter of law by failing to consider whether the Debtor's use of the funds to manage Abe's Boat Rentals satisfied his duty to manage a community enterprise under article 2369.3. *Id.*

Because Judge Magner never reached the merits of the article 2369.3 question, the district court vacated and remanded for the limited issue of determining "whether Hank Ton's liquidation of the life insurance policy and use of its proceeds for Abe's operations was in keeping with his duty under [Louisiana Civil Code] article 2369.3," as well as for "further proceedings consistent with this opinion." *Id.* at p. 11.[1] Thus, on remand, this Court must not only consider the life insurance proceeds issue but also the effect on the judgment of the district court vacating the key findings referenced above.

---

[1] The Plaintiff appealed the district court's decision, but the Fifth Circuit granted the Debtor's Motion to Dismiss the appeal, clearing the way for this remand. *See* Fifth Circuit Order Dismissing Appeal (ECF #88).

At a March 2, 2021 status conference, the Court invited the parties to file briefs addressing the article 2369.3 issue with respect to the use of the life insurance policy proceeds. The Plaintiff's brief, titled a "Memorandum Regarding Community *Retirement* Accounts" (ECF #91) (emphasis added), briefly touches on the use of the life insurance policy proceeds, but it is mostly focused (as the title suggests) on unrelated claims totaling nearly $1.4 million, concerning four allegedly forged checks paid from a retirement account and additional funds allegedly liquidated from other accounts. These additional claims are beyond the scope of what the Court asked the parties to brief.

They are also beyond the issues remanded to this Court. If the Plaintiff wished for the Court to address these issues, she should have raised them prior to submitting this case for trial on stipulated facts before Judge Magner and, if she was not satisfied with Judge Magner's ruling on them, she could have appealed that decision. It is far too late to raise these arguments. The only remaining issues in this adversary proceeding are those specified by Judge Milazzo on appeal, and in her remand to this Court. Accordingly, the Court will disregard the Plaintiff's arguments that focus on issues other than the life insurance policy proceeds.

As to the policy proceeds, the Plaintiff states that the Debtor received a total of $263,924.12 when he liquidated the proceeds, and he deposited these funds into the Abe's Boat Rentals Life Insurance Account. The only transfer from the Life Insurance Account the Plaintiff identifies is a March 30, 2016 transfer of $119,536.67 from the Life Insurance Account to Abe's operating account, but the Plaintiff does not specify the purpose of that transfer. The only other accounting entry the Plaintiff identifies is a September 30, 2016 "reclassification" of the $263,924.12 "life insurance expense" on Abe's books to a credit "due by shareholder," i.e., the Debtor. The Plaintiff fails to explain the relevance of any of these facts or offer any explanation for how the funds were actually used in connection with Abe's business, nor does she set out any argument explaining how the Debtor's use of the funds fails to satisfy his duty under article 2369.3. The Plaintiff, in short, absolutely fails to present any argument

4

concerning the only remaining undecided question in this case—whether the Debtor satisfied his statutory duty to manage the community enterprise, Abe's Boat Rentals.

The Debtor, on the other hand, filed a Supplemental Post-Trial Memorandum (ECF #92) addressing precisely the question of whether the Debtor's use of the life insurance proceeds for Abe's business benefited the community under article 2369.3. First, there is no question that the life insurance policy proceeds were legitimately used for the day-to-day business operations of Abe's, as both parties agreed in their Stipulations for Community Property Partition Trial:

> 41. As of the date of the termination of the community, Hendrikus Ton maintained a Prudential Life Insurance Policy Number V2 136 338 (the "Policy"). Ex. D-3 at page 8.

> 42. The Policy was subject to a security agreement and lien in favor of Whitney Bank. Ex. D-3 at page 9.

> 43. On or about March 8, 2019, Whitney Bank released its interest in the Policy. Ex. D-3 at page 9.

> 44. On or about March 16, 2016, the Policy was surrendered by Hendrikus Ton and the cash surrender value of the Policy was issued to Hendrikus Ton by a check in the amount of $263,924.12. Ex. D-3 at page 10.

> 45. On or about March 30, 2016, the proceeds of the Policy were deposited into the "Abe's Boat Rental Inc. Life Insurance Account" with Whitney Bank ending in number 4498 (the "Life Insurance Account"). Ex. D-3 at page 12.

> 46. On or about March 30, 2016, $119,536.67 was transferred from the Life Insurance Account to the operating account of Abe's Boat Rentals, Inc. Ex. D-3 at pages 12-13.

> 47. The funds transferred to the operating account of Abe's Boat Rentals, Inc. on or about March 30, 2016 were used to pay approximately $100,000 in 2015 property taxes due to Vermillion Parish in relation to 7 vessels owned by Abe's Boat Rentals, Inc. and approximately $19,000 in outstanding invoices due to Shipyard Service, LLC for

repairs to another vessel owned by Abe's Boat Rentals, Inc. Ex. D-3 at pages 15-23.

48. On or about May 16, 2016, $29,158.30 was transferred from the Life Insurance Account to the operating account of Abe's Boat Rentals, Inc. and was used to pay an outstanding invoice to Arthur J. Gallagher Risk Management Services, Inc. for hull insurance for vessels owned by Abe's Boat Rentals, Inc. Ex. D-3 at pages 26 and 29.

49. On or about May 24, 2016, $32,963.93 was transferred from the Life Insurance Account and was used to pay an outstanding invoice with Hardrock Marine Service, LLC for work performed on a vessel owned by Abe's Boat Rentals, Inc. Ex. D-3 at pages 26-28 and 30-31.

50. On or about June 24, 2016, $21,688.52 was transferred from the Life Insurance Account and was used to pay an outstanding invoice to Arthur J. Gallagher Risk Management Service, Inc. for hull insurance for vessels owned by Abe's Boat Rentals, Inc. Ex. D-3 at pages 32-35.

51. On or about February 2, 2017, $18,230.02 was transferred from the Life Insurance Account and was used to pay four (4) outstanding invoices to United Power Systems, LLC for work performed on vessels owned by Abe's Boat Rentals, Inc. Ex. D-3 at pages 48-62.

52. On or about February 24, 2017, $39,044.41 was transferred from the Life Insurance Account and was used to make an installment payment due in relation to an insurance premium financing agreement by Abe's Boat Rentals, Inc. Ex. D-3 at pages 48-62.

53. On or about November 10, 2017, $3,244.06 was transferred from the Life Insurance Account via check.

Stipulations for Community Property Trial, pp. 6-8 (ECF #38). The Court has reviewed the record evidence, and it supports all of these stipulations. Furthermore,

the transfers from the Life Insurance Account to the operating account to cover these expenditures total the amount of the life insurance proceeds.[2]

The question before the Court is whether the Debtor satisfied his duty to preserve and manage the community asset, the business of Abe's Boat Rentals, by using the life insurance policy proceeds for Abe's operations. Based on the stipulated facts, it is plain that the life insurance proceeds were used on ordinary and even necessary (e.g., property taxes) expenditures in the ordinary course of Abe's business. The Debtor has laid out sound arguments under the Louisiana Civil Code for why these expenditures were consistent with his duty under La. Civ. Code art. 2369.3, and they are consistent with the law set out by Judge Milazzo, including *Granger v. Granger*, 967 So. 2d 540 (La. Ct. App. 2007), and *Ellington v. Ellington*, 842 So. 2d 1160 (La. Ct. App. 2003). The Plaintiff, on the other hand, has failed to even set out relevant facts regarding the expenditures, much less offer any argument that the Debtor failed to satisfy his statutory duty under article 2369.3.

The Court finds that the Debtor's use of the life insurance policy proceeds to fund the legitimate business operations of Abe's Boat Rentals, a community asset, satisfied his statutory duty under article 2369.3 "to preserve and to manage prudently former community property under his control in a manner consistent with the mode of use of that property immediately prior to termination of the community regime." The stipulated facts show that there is nothing questionable about the uses to which the funds were actually put. The Court therefore agrees, as the Debtor argues, that under the doctrine of real subrogation, the Plaintiff is not entitled to reimbursement for the use of community funds to preserve and manage former community property, Abe's Boat Rentals.

With this ruling, all issues in this case have now been decided, and all that remains is to enter a judgment. However, because both the district court's decision on appeal and this decision on remand have substantially changed the outcome

---

[2] To be precise, the sum of the listed expenditures is $263,329.24, which is $594.88 less than the total policy proceeds of $263,924.12, but the first two expenditures, for the 2015 property taxes and Shipyard Services invoice, were approximate, which could easily account for the difference.

compared to Judge Magner's original decision, the Court would prefer to give the parties an opportunity to provide input on the proposed final judgment.[3] Accordingly,

IT IS ORDERED that both parties shall submit to the Court, within ten (10) days following entry of this ruling:

> (a) a proposed judgment; and

> (b) a memorandum in support setting out the basis for the proposed judgment, taking into account Judge Magner's original ruling, Judge Milazzo's decision on appeal, and this ruling on remand.

The Court will entertain no further arguments in this case on any issues beyond the scope of these three rulings.

Thus, done and signed this ___19th___ day of April, 2021.

_____
Chief Judge John W. Kolwe
United States Bankruptcy Judge

---

[3] The Debtor provided a framework for a suggested judgment in his post-trial brief, but it stopped short of providing a specific form of judgment. The Plaintiff has, to date, offered no framework for judgment in light of the district court decision.